## LYONS v. OKLAHOMA.

No. 433. Argued April 26, 1944.—Decided June 5, 1944.

*Mr. Thurgood Marshall,* with whom *Messrs. Amos T. Hall, William H. Hastie,* and *Leon A. Ransom* were on the brief, for petitioner.

*Mr. Sam H. Lattimore,* Assistant Attorney General of Oklahoma, with whom *Mr. Randell S. Cobb,* Attorney General, was on the brief, for respondent.

*Mr. Morris L. Ernst* filed a brief on behalf of the American Civil Liberties Union, as *amicus curiae,* urging reversal.

MR. JUSTICE REED delivered the opinion of the Court.

This writ brings to this Court for review a conviction obtained with the aid of a confession which furnished, if voluntary, material evidence to support the conviction. As the questioned confession followed a previous confession which was given on the same day and which was admittedly involuntary,[1] the issue is the voluntary character of the second confession under the circumstances which existed at the time and place of its signature and, particularly, because of the alleged continued influence of the unlawful inducements which vitiated the prior confession.

The petitioner was convicted in the state district court of Choctaw County, Oklahoma, on an information charging him and another with the crime of murder. The jury fixed his punishment at life imprisonment. The conviction was affirmed by the Criminal Court of Appeals, 77 Okl. Cr. —, 138 P. 2d 142, rehearing 140 P. 2d 248, and this Court granted certiorari, 320 U. S. 732, upon the petitioner's representation that there had been admitted against him an involuntary confession procured under circumstances which made its use in evidence a violation of his rights under the due process clause of the Fourteenth Amendment.[2]

---

[1] Whether or not the other evidence in the record is sufficient to justify the general verdict of guilty is not necessary to consider. The confession was introduced over defendant's objection. If such admission of this confession denied a constitutional right to defendant the error requires reversal. *Bram* v. *United States,* 168 U. S. 532, 540–42. Cf. *Stromberg* v. *California,* 283 U. S. 359, 367, 368; *Williams* v. *North Carolina,* 317 U. S. 287, 291, 292.

[2] In petitioner's brief a claim is made that Oklahoma denied to him the equal protection of the laws guaranteed by the Fourteenth Amendment. Apparently petitioner relies upon his undue detention without preliminary examination, which was in violation of the state criminal procedure, as a denial by Oklahoma of equal protection of the law. But the effect of the mere denial of a prompt examining

Prior to Sunday, December 31, 1939, Elmer Rogers lived with his wife and three small sons in a tenant house situated a short distance northwest of Fort Towson, Choctaw County, Oklahoma. Late in the evening of that day Mr. and Mrs. Rogers and a four-year-old son Elvie were murdered at their home and the house was burned to conceal the crime.

Suspicion was directed toward the petitioner Lyons and a confederate, Van Bizzell. On January 11, 1940, Lyons was arrested by a special policeman and another officer whose exact official status is not disclosed by the record. The first formal charge that appears is at Lyons' hearing before a magistrate on January 27, 1940. Immediately after his arrest there was an interrogation of about two hours at the jail. After he had been in jail eleven days he was again questioned, this time in the county prosecutor's office. This interrogation began about six-thirty in the evening, and on the following morning between two and four produced a confession. This questioning is the basis of the objection to the introduction as evidence of a second confession which was obtained later in the day at the state penitentiary at McAlester by Warden Jess Dunn and introduced in evidence at the trial. There was also a third confession, oral, which was admitted on the trial without objection by petitioner. This was given to a guard at the penitentiary two days after the second. Only the petitioner, police, prosecuting and penitentiary officials were present at any of these interrogations, except that a private citizen who drove the car that brought Lyons to McAlester witnessed this second confession.

---

trial is a matter of state, not of federal, law. To refuse this is not a denial of equal protection under the Fourteenth Amendment although it is a fact for consideration on an allegation that a confession used at the trial was coerced. Cf. *McNabb* v. *United States,* 318 U. S. 332, 340; *United States* v. *Mitchell,* 322 U. S. 65.

Lyons is married and was 21 or 22 years of age at the time of the arrest. The extent of his education or his occupation does not appear. He signed the second confession. From the transcript of his evidence, there is no indication of a subnormal intelligence. He had served two terms in the penitentiary—one for chicken stealing and one for burglary. Apparently he lived with various relatives.

While petitioner was competently represented before and at the trial, counsel was not supplied him until after his preliminary examination, which was subsequent to the confessions. His wife and family visited him between his arrest and the first confession. There is testimony by Lyons of physical abuse by the police officers at the time of his arrest and first interrogation on January 11th. His sister visited him in jail shortly afterwards and testified as to marks of violence on his body and a blackened eye. Lyons says that this violence was accompanied by threats of further harm unless he confessed. This evidence was denied *in toto* by officers who were said to have participated.

Eleven days later the second interrogation occurred. Again the evidence of assault is conflicting. Eleven or twelve officials were in and out of the prosecutor's small office during the night. Lyons says that he again suffered assault. Denials of violence were made by all the participants accused by Lyons except the county attorney, his assistant, the jailer and a highway patrolman. Disinterested witnesses testified to statements by an investigator which tended to implicate that officer in the use of force, and the prosecutor in cross-examination used language which gave color to defendant's charge. It is not disputed that the inquiry continued until two-thirty in the morning before an oral confession was obtained and that a pan of the victims' bones was placed in Lyons' lap by his

interrogators to bring about his confession. As the confession obtained at this time was not offered in evidence, the only bearing these events have here is their tendency to show that the later confession at McAlester was involuntary.

After the oral confession in the early morning hours of January 23, Lyons was taken to the scene of the crime and subjected to further questioning about the instruments which were used to commit the murders. He was returned to the jail about eight-thirty A. M. and left there until early afternoon. After that the prisoner was taken to a nearby town of Antlers, Oklahoma. Later in the day a deputy sheriff and a private citizen took the petitioner to the penitentiary. There, sometime between eight and eleven o'clock on that same evening, the petitioner signed the second confession.

When the confession which was given at the penitentiary was offered, objection was made on the ground that force was practiced to secure it and that, even if no force was then practiced, the fear instilled by the prisoner's former treatment at Hugo on his first and second interrogations continued sufficiently coercive in its effect to require the rejection of the second confession.

The judge, in accordance with Oklahoma practice and after hearing evidence from the prosecution and the defense in the absence of the jury, first passed favorably upon its admissibility as a matter of law, *Lyons* v. *State,* 138 P. 2d 142, 163; cf. *McNabb* v. *United States,* 318 U. S. 332, 338, n. 5, and then, after witnesses testified before the jury as to the voluntary character of the confession, submitted the guilt or innocence of the defendant to the jury under a full instruction, approved by the Criminal Court of Appeals, to the effect that voluntary confessions are admissible against the person making them but are to be "carefully scrutinized and received with great caution"

by the jury and rejected if obtained by punishment, intimidation or threats. It was added that the mere fact that a confession was made in answer to inquiries "while under arrest or in custody" does not prevent consideration of the evidence if made "freely and voluntarily." The instruction did not specifically cover the defendant's contention, embodied in a requested instruction, that the second confession sprang from the fear engendered by the treatment he had received at Hugo.

The mere questioning of a suspect while in the custody of police officers is not prohibited either as a matter of common law or due process. *Lisenba* v. *California*, 314 U. S. 219, 239–241; *Wan* v. *United States*, 266 U. S. 1, 14. The question of how specific an instruction in a state court must be upon the involuntary character of a confession is, as a matter of procedure or practice, solely for the courts of the state. When the state-approved instruction fairly raises the question of whether or not the challenged confession was voluntary, as this instruction did, the requirements of due process, under the Fourteenth Amendment, are satisfied and this Court will not require a modification of local practice to meet views that it might have as to the advantages of concreteness. The instruction given satisfies the legal requirements of the State of Oklahoma as to the particularity with which issues must be presented to its juries, *Lyons* v. *State*, 138 P. 2d 142, 164, and in view of the scope of that instruction, it was sufficient to preclude any claim of violation of the Fourteenth Amendment.

The federal question presented is whether the second confession was given under such circumstances that its use as evidence at the trial constitutes a violation of the due process clause of the Fourteenth Amendment, which requires that state criminal proceedings "shall be consistent with the fundamental principles of liberty and

justice." *Hebert* v. *Louisiana,* 272 U. S. 312, 316; *Mooney* v. *Holohan,* 294 U. S. 103, 112; *Buchalter* v. *New York,* 319 U. S. 427, 429.

No formula to determine this question by its application to the facts of a given case can be devised. *Hopt* v. *Utah,* 110 U. S. 574, 583; *Betts* v. *Brady,* 316 U. S. 455, 462. Here improper methods were used to obtain a confession, but that confession was not used at the trial. Later, in another place and with different persons present, the accused again told the facts of the crime. Involuntary confessions, of course, may be given either simultaneously with or subsequently to unlawful pressures, force or threats. The question of whether those confessions subsequently given are themselves voluntary depends on the inferences as to the continuing effect of the coercive practices which may fairly be drawn from the surrounding circumstances. *Lisenba* v. *California,* 314 U. S. 219, 240. The voluntary or involuntary character of a confession is determined by a conclusion as to whether the accused, at the time he confesses, is in possession of "mental freedom" to confess to or deny a suspected participation in a crime. *Ashcraft* v. *Tennessee,* 322 U. S. 143, 154; *Hysler* v. *Florida,* 315 U. S. 411, 413.

When conceded facts exist which are irreconcilable with such mental freedom, regardless of the contrary conclusions of the triers of fact, whether judge or jury, this Court cannot avoid responsibility for such injustice by leaving the burden of adjudication solely in other hands. But where there is a dispute as to whether the acts which are charged to be coercive actually occurred, or where different inferences may fairly be drawn from admitted facts, the trial judge and the jury are not only in a better position to appraise the truth or falsity of the defendant's assertions from the demeanor of the witnesses but the legal duty is upon them to make the decision. *Lisenba* v. *California, supra,* p. 238.

Review here deals with circumstances which require examination into the possibility as to whether the judge and jury in the trial court could reasonably conclude that the McAlester confession was voluntary. The fact that there is evidence which would justify a contrary conclusion is immaterial. To triers of fact is left the determination of the truth or error of the testimony of prisoner and official alike. It is beyond question that if the triers of fact accepted as true the evidence of the immediate events at McAlester, which were detailed by Warden Dunn and the other witnesses, the verdict would be that the confession was voluntary, so that the petitioner's case rests upon the theory that the McAlester confession was the unavoidable outgrowth of the events at Hugo.

The Fourteenth Amendment does not protect one who has admitted his guilt because of forbidden inducements against the use at trial of his subsequent confessions under all possible circumstances. The admissibility of the later confession depends upon the same test—is it voluntary. Of course the fact that the earlier statement was obtained from the prisoner by coercion is to be considered in appraising the character of the later confession. The effect of earlier abuse may be so clear as to forbid any other inference than that it dominated the mind of the accused to such an extent that the later confession is involuntary. If the relation between the earlier and later confession is not so close that one must say the facts of one control the character of the other, the inference is one for the triers of fact and their conclusion, in such an uncertain situation, that the confession should be admitted as voluntary, cannot be a denial of due process. *Canty* v. *Alabama,* 309 U. S. 629, cannot be said to go further than to hold that the admission of confessions obtained by acts of oppression is sufficient to require a reversal of a state conviction by this Court. Our judgment there relied solely upon *Chambers* v. *Florida,* 309 U. S. 227. The Oklahoma

Criminal Court of Appeals in the present case decided that the evidence would justify a determination that the effect of a prior coercion was dissipated before the second confession and we agree.

Petitioner suggests a presumption that earlier abuses render subsequent confessions involuntary unless there is clear and definite evidence to overcome the presumption. We need not analyze this contention further than to say that in this case there is evidence for the state which, if believed, would make it abundantly clear that the events at Hugo did not bring about the confession at McAlester.

In our view, the earlier events at Hugo do not lead unescapably to the conclusion that the later McAlester confession was brought about by the earlier mistreatments. The McAlester confession was separated from the early morning statement by a full twelve hours. It followed the prisoner's transfer from the control of the sheriff's force to that of the warden. One person who had been present during a part of the time while the Hugo interrogation was in progress was present at McAlester, it is true, but he was not among those charged with abusing Lyons during the questioning at Hugo. There was evidence from others present that Lyons readily confessed without any show of force or threats within a very short time of his surrender to Warden Dunn and after being warned by Dunn that anything he might say would be used against him and that he should not "make a statement unless he voluntarily wanted to." Lyons, as a former inmate of the institution, was acquainted with the warden. The petitioner testified to nothing in the past that would indicate any reason for him to fear mistreatment there. The fact that Lyons, a few days later, frankly admitted the killings to a sergeant of the prison guard, a former acquaintance from his own locality, under circumstances free of coercion suggests strongly that the petitioner had concluded that it was wise to make a clean breast of his guilt and that

his confession to Dunn was voluntary. The answers to the warden's questions, as transcribed by a prison stenographer, contain statements correcting and supplementing the questioner's information and do not appear to be mere supine attempts to give the desired response to leading questions.

The Fourteenth Amendment is a protection against criminal trials in state courts conducted in such a manner as amounts to a disregard of "that fundamental fairness essential to the very concept of justice," and in a way that "necessarily prevents a fair trial." *Lisenba* v. *California,* 314 U. S. 219, 236. A coerced confession is offensive to basic standards of justice, not because the victim has a legal grievance against the police, but because declarations procured by torture are not premises from which a civilized forum will infer guilt. The Fourteenth Amendment does not provide review of mere error in jury verdicts, even though the error concerns the voluntary character of a confession. We cannot say that an inference of guilt based in part upon Lyons' McAlester confession is so illogical and unreasonable as to deny the petitioner a fair trial.

*Affirmed.*

MR. JUSTICE DOUGLAS concurs in the result.

MR. JUSTICE RUTLEDGE dissents.

MR. JUSTICE MURPHY, dissenting:

This flagrant abuse by a state of the rights of an American citizen accused of murder ought not to be approved. The Fifth Amendment prohibits the federal government from convicting a defendant on evidence that he was compelled to give against himself. *Bram* v. *United States,* 168 U. S. 532. Decisions of this Court in effect have held that the Fourteenth Amendment makes this prohibition applicable to the states. *Chambers* v. *Florida,*

309 U. S. 227; *Canty* v. *Alabama,* 309 U. S. 629; *Lisenba* v. *California,* 314 U. S. 219; *Ashcraft* v. *Tennessee,* 322 U. S. 143. Cf. Green, "Liberty Under the Fourteenth Amendment," 27 Wash. Univ. L. Q. 497, 533. It is our duty to apply that constitutional prohibition in this case.

Even though approximately twelve hours intervened between the two confessions and even assuming that there was no violence surrounding the second confession, it is inconceivable under these circumstances that the second confession was free from the coercive atmosphere that admittedly impregnated the first one. The whole confession technique used here constituted one single, continuing transaction. To conclude that the brutality inflicted at the time of the first confession suddenly lost all of its effect in the short space of twelve hours is to close one's eyes to the realities of human nature. An individual does not that easily forget the type of torture that accompanied petitioner's previous refusal to confess, nor does a person like petitioner so quickly recover from the gruesome effects of having had a pan of human bones placed on his knees in order to force incriminating testimony from him. Cf. *State* v. *Ellis,* 294 Mo. 269; *Fisher* v. *State,* 145 Miss. 116, 110 So. 361; *Reason* v. *State,* 94 Miss. 290, 48 So. 820; *Whitley* v. *State,* 78 Miss. 255; *State* v. *Wood,* 122 La. 1014, 48 So. 438. Moreover, the trial judge refused petitioner's request that the jury be charged that the second confession was not free and voluntary if it was obtained while petitioner was still suffering from the inhuman treatment he had previously received. Thus it cannot be said that we are confronted with a finding by the trier of facts that the coercive effect of the prior brutality had completely worn off by the time the second confession was signed.

Presumably, therefore, this decision means that state officers are free to force a confession from an individual

by ruthless methods, knowing full well that they dare not use such a confession at the trial, and then, as a part of the same continuing transaction and before the effects of the coercion can fairly be said to have completely worn off, procure another confession without any immediate violence being inflicted. The admission of such a tainted confession does not accord with the Fourteenth Amendment's command that a state shall not convict a defendant on evidence that he was compelled to give against himself. *Chambers* v. *Florida, supra; Canty* v. *Alabama, supra; Lisenba* v. *California, supra; Ashcraft* v. *Tennessee, supra.*

MR. JUSTICE BLACK concurs in this opinion.