Earl Stephen JONES, Plaintiff In Error,

v.

The STATE of Oklahoma, Defendant In Error.

No. A-12327.

Criminal Court of Appeals of Oklahoma.
Oct. 3, 1956.

Ralph Samara, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Earl Stephen Jones, hereinafter referred to as defendant, was charged by information in the district court of Oklahoma County with the crime of burglary in the second degree, after former conviction of a felony, was tried before a jury, convicted and his punishment fixed at imprisonment in the State Penitentiary at McAlester for a period of ten years. A lengthy record on appeal has been prepared at the expense of the State.

For reversal some nine specifications of error are set out in the petition in error, argued in brief under six propositions numbered 1, 2, 3, 4, 5 and 9, and will be treated in the order thus presented.

It is first argued that the verdict is not sustained by sufficient evidence.

The record discloses that Jack McCormick owned a tavern and beer parlor located at 915 North Hudson, Oklahoma City. One D. H. Ralston was actually the operator of the business, on a percentage basis. Ralston closed the business about midnight on January 2, 1953. The next morning he opened up the place of business and soon thereafter telephoned McCormick. Mr. McCormick immediately went to his place of business and found that the hasp on the door located on the alley side of the tavern had been removed and that the drawer on the cash register had been pried open. McCormick testified that it had been the custom to place the day's receipts in a small money box and place the same underneath the seat in one of the booths in the rear of the tavern. It was gone. He estimated the loss was $120, as shown by entries regularly made in his records. He identified one roll of nickels as being part of the stolen money, as they were painted with finger-nail polish, used to identify them as juke box nickels. He testified that he eventually got back, through the Oklahoma City Police Department, $52 of the stolen money. He testified at trial that he had at that time sold his tavern, and that the former manager, Mr. Ralston, was at that time in the military service. He said that the burglary was reported to the Oklahoma City Police Department, as distinguished from the sheriff's office.

E. A. "Boots" Capshaw, deputy sheriff, testified that he had known the defendant about five years. He said that on January 3, 1953, several burglaries in Oklahoma City had been reported to the sheriff's office, particularly the Wythe Drug Store, and that he had been looking for the defendant and one J. C. Rone in connection therewith. That he received information that defendant and Rone were in Shawnee and the Shawnee police picked them up and he and Golden Kennedy of the State Crime Bureau went to Shawnee and returned the prisoners to Oklahoma City, where they were booked for burglary on the morning of January 5, 1953. He said that he informed them at time of arrest that they were being picked up for burglary, and particularly the Wythe Drug Store burglary. He said that the Shawnee police furnished him the Oklahoma City address of Rone, and on return

to Oklahoma City he obtained a search warrant to search and did search this house. He said that he found 26 rolls of nickels tied up in a T-shirt, in the southwest bedroom of the home, and found a gallon can about three-fourths full of nickels that had been covered with red finger-nail polish, and a few quarters and dimes; and found a large "piggy bank" full of change.

Witness said that in the meantime the defendant had talked to other officers about making a statement and later told witness that he would make a statement to the county attorney, if witness would make a recommendation as to a certain number of years. Officer Capshaw said that defendant told him that the 26 rolls of nickels found at the Rone residence belonged to him.

Sherman Brown, deputy sheriff, testified to being one of the officers who returned defendant and others from Shawnee as burglary suspects and to finding nickels and other change in the J. C. Rone place on Mirimar Boulevard, Oklahoma City, and that defendant told him where the money came from. He offered to show the officers, and on Sunday night following the arrest they took defendant driving so that he could point out the place that had been burglarized. The sheriff's office at the time did not have a report on this particular burglary. Defendant eventually pointed out the tavern at 915 North Hudson and witness stopped his car and went in and was advised by the manager that the tavern had actually been burglarized, and Ralston, the manager, went out to the car and talked with defendant. Said he:

"A. This other fellow, Jones here, and, we talked about the place being burglarized, and about the money that he got out of this tackle box, and; this man, he asked Jones, 'How did you know where I kept my money?' And he says, 'Well, I was here a few days ago and watched you when you hid it behind the booth in the back of the bar and that is how I knew where to get the money'; and, he came back here and he later taken a statement * * *."

Deputy Brown denied mistreating defendant, or coercing him into pointing out the place where he had said the nickels came from.

There was received in evidence a subsequent written confession made by defendant to a secretary in the county attorney's office, taken down in shorthand, and thereafter transcribed, read and signed by the defendant. In it defendant admitted burglarizing the tavern at 915 North Hudson some time after 2 A.M. Saturday, January 3, 1953, and admitted that the nickels obtained at the house at 1716 Mirimar rolled and tied in a T-shirt were obtained in the burglary.

O. E. Higginbotham, deputy sheriff, who was with Deputy Brown when defendant pointed out the place he said he robbed, testified substantially as did Deputy Brown concerning this matter.

M. B. Cooper, city policeman, testified to being present in the office of the assistant county attorney, Hubert Gibson, when the confession in question was made by the defendant, and he said that defendant was advised that the statement must be purely voluntary; that defendant showed no evidence of mistreatment and that no threats or promises were made the defendant.

J. W. Casady of the Oklahoma City Police Department testified that the burglary at 915 North Hudson had been reported to the Oklahoma City Police Department, and that later on the Police Department was informed by the sheriff's office that the defendant was to make a written statement in the county attorney's office concerning the robbery at 915 North Hudson. Witness was present when the statement was made and saw defendant sign the same. He saw no marks of violence on defendant, or any evidence that the statement was not voluntarily made.

Frances Schmidt, stenographer in the county attorney's office, testified that on January 5, 1953 (Monday morning), she took down a statement made by Earl Stephen Jones, the defendant. She said that besides the defendant there were present

two policemen, two deputy sheriffs, and assistant county attorney Gibson, and that Deputy Brown asked the questions and she transcribed the statement and thereafter defendant signed the same. She said that the defendant did not appear to have been mistreated in any way; that the door was open; that there was no protest on the part of the defendant. She identified the statement, which was introduced in evidence.

Hubert Gibson, attorney, identified State's Exhibit No. 1, the confession in question, and said that it was made in his office on January 5, 1953, at which time he was assistant county attorney of Oklahoma County. He denied that anyone threatened the defendant and said that at no time did the defendant complain of mistreatment or that he was being forced to make the statement. He saw no evidence of any irregularity.

The State rested and the defendant interposed a demurrer, which was overruled.

Counsel for the defendant in his opening statement announced that his defense would be *that the confession obtained from the defendant was by reason of threats and a beating administered by Deputy Brown,* and that his client was held in jail without benefit of counsel from 2 A.M. January 4, 1953, until 11 A.M. January 5, 1953, when a writ of habeas corpus was heard; that his client was innocent.

Earl Stephen Jones, defendant, testified that he was 24 years of age; that in 1950 in Seminole County he was convicted of burglary and served time in the State Penitentiary, and was at the time serving time in the penitentiary and it would be five months until his sentence was satisfied. He testified to being arrested along with J. C. Rone and wife and another person, in Shawnee, around 9 or 10 P.M. January 3, 1953. That he was informed that the sheriff's office in Oklahoma City had ordered his arrest; that after midnight Mr. Capshaw and Mr. Golden Kennedy returned him to Oklahoma City; that Capshaw and

Kennedy discussed keeping his lawyer from seeing him while he was held for the investigation; that Capshaw said: "When I book him into Oklahoma County jail he wont see an attorney until we get ready for him to." He said that when they got to the jail Mr. Sherman Brown came out of a cafe and went in and signed a release for the prisoners and took them to the sheriff's office and commenced questioning them as to where they had been, where they were living, and tried to get defendant to tell where J. C. Rone lived but he would not tell. That in the meantime someone was supposed to have gone out to J. C. Rone's home, searched it, and they brought back around $70 in nickels, rolled in bank wrappers, and brought back a personal billfold that belonged to defendant, and a $2 camera that belonged to him, all wrapped in a pillow case, and dumped the contents on a bed and said, "We got all of this out at your house. Who does it belong to?" Witness said J. C. Rone claimed the nickels and he claimed the billfold. They wanted to know where the things came from, and he and Rone told the officers they did not know. He said this was at 4 o'clock Sunday morning, and the officers then placed them in jail. That he was not permitted to use a telephone to call an attorney; that about 9:30 Sunday night Deputy Brown came up to his cell and signed him out and told him they were going to the sheriff's office to talk, but when they got to the ground floor the officer directed him outside and he and Brown got into the back seat of Deputy Higginbotham's car, drove east on Reno to Eastern, and out to Lincoln Park and Brown hit him in the stomach and chest several times and one time on the side of his head, hit an eye and made it black; that he protested to Brown that he did not know anything about a number of burglaries inquired about; that Brown was expressing his regret that he did not have his "sap". He said that he finally told Brown, "Well, you decide for yourself what you want me to sign a statement to and I will sign the statement if you will bring me back up to the jail and leave me alone."

He said Deputy Brown promised to file one charge—not a second offense charge. He said Officer Higginbotham ·then drove directly to the tavern on North Hudson and brought the manager out·to the car, and the manager could not identify him. He said he was then taken to jail and booked for the burglary; that the next morning about 9 or 9:15 they took him to the county attorney's office where he signed a statement and was then told he could see his lawyer; that his attorney was downstairs and had already filed a petition for his release on habeas corpus.

On cross-examination witness admitted that when he was brought before District Judge Mills for the habeas corpus hearing, which the record shows was dismissed after the charge was filed against defendant, that he never told the judge that his constitutional rights had been violated, or that he was held incommunicado, or threatened or beaten. Witness said that on the night of January 2 for about two hours he was in a barbecue stand on Fifth and North Hudson; that he sat there and ate a plate of barbecue and drank five or six bottles of beer, went home to 1716 Mirimar and took a bath, cleaned up and went to bed about 11:30 and did not get up until about ten o'clock the next morning, which was Saturday. This completed the defendant's case, except for testimony of deputy court clerk W. H. Regian, and J. T. Spivey, the jailer, concerning records as to the charge filed against him and when he was in and out of the jail, etc.

The county attorney and defense counsel then stipulated that Earl Stephen Jones, the defendant, was on January 30, 1950, convicted in Seminole County of the crime of burglary in the second degree, as alleged in the information.

If the confession allegedly made and signed by the defendant was made voluntarily and without coercion, the evidence was sufficient to support the charge, otherwise not. For a full discussion of the law applicable, see Lyons v. State, 77 Okl.Cr. 197, 138 P.2d 142, 140 P.2d 248, Id., 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481; and Hendrickson v. State, 93 Okl.Cr. 379, 229 P.2d 196.

Officers Higginbotham and Brown denied mistreating the defendant; they said that after the nickels were found the defendant volunteered to show them where the money came from; that defendant could not tell them the address but said that he could show them and that is the only reason they took him in the car. Deputy Brown said that this particular burglary had not then been reported to the Sheriff's office, so they could not know about it only through the defendant. The burglary had been reported to the police.

From the evidence, if Deputy Brown had on Sunday night struck defendant, none of the various other witnesses could discover anything in defendant's demeanor Monday morning when he made the apparent voluntary statement in the office of the assistant county attorney.

The court by a proper instruction submitted to the jury the question as to whether the confession was a voluntary one and the issue was resolved against the defendant. For such reason, we must hold that the evidence was amply sufficient to support the charge. The confession was supported by ample corroborative circumstances.

But it is contended in proposition two that the court erred in overruling defendant's motion to suppress the evidence. This proposition is based on the contention, first, that his arrest was an illegal arrest because the officer did not act under authority of a warrant. This is undisputed, but the officer testified to a number of burglaries having been committed in Oklahoma City, where safes were opened, particularly the burglary of the Wythe Drug Store. Burglary is a felony. The officers testified they had reason to believe that defendant knew something about these burglaries, and they wanted to question him. They had a right to do this. See 22 O.S.1951 § 196(3).

Thereafter the officers, according to the evidence, obtained a search warrant for

1716 North Mirimar, the home of J. C. Rone, and wife, and where defendant had a room—the southeast room. The nickels and other metal money was found in the southwest bedroom, where J. C. Rone and wife slept. Defendant and the Rones had occupied the home for about two weeks. The officers said that the search warrant was obtained from the court of Mr. Mansfield at Bethany; that no one was in the home when the search was made.

The burden was on the proponent of the motion to suppress to show the invalidity of the search. Merwin v. State, Okl.Cr., 277 P.2d 208; Cornett v. State, 96 Okl.Cr. 165, 249 P.2d 1016; Micklick v. State, Okl.Cr., 285 P.2d 462.

But whether the officers did or did not have a proper search warrant is immaterial under the proof, as the record shows that the evidence sought to be suppressed—the money—was found in the room of J. C. Rone. Officers Brown and Capshaw said that defendant claimed the money. The defendant said J. C. Rone claimed the money. Defendant denied claiming it. There was no error in overruling the motion to suppress. See Kizer v. State, 96 Okl.Cr. 92, 249 P.2d 132.

It is next urged that the court committed reversible error in permitting the assistant county attorney to question the defendant relative to statements made to Mr. Capshaw concerning the connection of the defendant with certain other burglaries.

Ordinarily, of course, on trial an accused may be questioned only as to convictions. But here the defendant was claiming an illegal arrest and that when arrested he was not informed why he was being taken into custody. Officer Capshaw had, when testifying, related a conversation that he had with defendant at the time he had taken him into custody; what he said and what defendant said, and later about defendant's confession to the crime for which he was being prosecuted. Also the defendant when testifying referred to certain burglaries that he said Officer Brown had mentioned to him and questioned him about (the one for which he was being tried not being one of

them), and claimed that he confessed to the one charged because Brown hit him and threatened him. Under such circumstances, we find no error in the examination now complained of. It is next urged that the court erred in not giving to the jury the five instructions requested by the defendant. We have examined these instructions carefully in relation to the record and in connection with the instructions actually given.

It is our conclusion that the instructions actually given covered the issues. Instruction No. 5 given advised the jury that they must find the oral and written confessions to have been voluntarily made in order to consider such in evidence, and the jury was cautioned to carefully scrutinize such admissions and statements. While the instruction could have been couched in more positive language, we consider it sufficient, under the evidence.

Defendant's requested instruction No. 3 reads:

"You are further instructed that there is no legal foundation for the incarceration of an individual in any jail in the State of Oklahoma under the fictitious charge of 'investigation', and that a person taken into custody or incarcerated in any jail is entitled to legal counsel forthwith, at all stages of the criminal proceedings under which he stands charged, and especially when he is so incarcerated. This is his right as provided by the United States Constitution, and the statutes of the State of Oklahoma.

"Further, that a denial of this right of consultation at any time when a person is so incarcerated is an invasion of the accused's rights as provided by the United States Constitution, and the laws of the State of Oklahoma."

While the requested instruction is a correct abstract statement of the law, under the facts in the within case defendant was not entitled to such an instruction. The record fails to show any unnecessary delay in filing a charge and arraignment of defendant on the charge, after his oral and

then his written confession. A Sunday intervened. The charge could not have been filed until Monday morning, in the orderly processing of the case. It was so filed.

It is finally argued that the county attorney in his closing argument to the jury admitted that the arrest of the defendant was without warrant, and counsel argues that the arrest was therefore illegal. We have already covered this question in this opinion. We have seen that several burglaries involving opening of safes had been reported to the sheriff's office; felonies had actually been committed and the officers had reason to believe defendant had knowledge of one or more of these burglaries, and he was arrested with view of filing charges against him in one or more of these crimes. A warrant for his arrest was therefore not necessary. 22 O.S.1951 § 196(3). In the meantime, defendant allegedly confessed to the felony here involved, which eliminated all questions concerning his original arrest for the other burglaries.

For the reasons given, the judgment appealed from is affirmed.

JONES, P. J., and BRETT, J., concur.