Floyd CATO, Petitioner-Appellant,

v.

Ralph W. ALVIS, Warden, Ohio State
Penitentiary, Respondent-Appellee.

No. 14278.

United States Court of Appeals
Sixth Circuit.

April 4, 1961.

Clifford F. Brown, Norwalk, Ohio, for appellant.

John J. Connors, Jr., Asst. Atty. Gen. of Ohio, Mark McElroy, Atty. Gen. of Ohio, on brief, for appellee.

Before SIMONS, Senior Circuit Judge, CECIL, Circuit Judge, and THORNTON, District Judge.

CECIL, Circuit Judge.

This appeal involves the denial of a petition for a writ of habeas corpus by the District Court, for the Eastern Division, of the Southern District of Ohio.

The Petitioner-Appellant is confined in the Ohio State Penitentiary on conviction of a three-count indictment from the Court of Common Pleas, of Erie County, Ohio.

The appellant's conviction was affirmed by the Court of Appeals of Erie County, and the Supreme Court of Ohio, Cato v. State, 167 Ohio St. 320, 147 N.E.2d 857, dismissed the appeal. His petition to the Supreme Court of the United States for a writ of certiorari was also denied 357 U.S. 931, 78 S.Ct. 1377, 2 L.Ed.2d 1374.

The appellant was represented by counsel and was accorded a hearing in the District Court. That court had before it the testimony of the petitioner and a transcript of the evidence taken at the trial, which was submitted by stipulation of counsel.

It is undisputed that the petitioner was arrested on February 6th without a warrant and was held without a warrant until February 11th. At that time, he was taken before a court on a warrant and held for the grand jury. During the interval, recorded statements were taken from him on February 7th, 8th and 11th. These statements were admitted in evidence at the trial. Shirley Hale Cato, the common-law wife of the appellant, was present at the time the second and third statements were taken.

The petitioner complains that, during the time he was held without a warrant, he was not advised of his right to secure a lawyer, or to remain silent, or to be taken before a court, or a magistrate. He further complains that he was subjected to persistent and prolonged inter-

rogation and was prohibited from seeing his purported wife, until after he had made a statement.

The District Judge held that the undisputed testimony was insufficient to establish that the petitioner's confessions were involuntary. He further held "that the trial court's resolution of conflicting testimony, as to the voluntariness of petitioner's confession, cannot now be reviewed in habeas corpus."

The petitioner was indicted along with his brother Wilford and Lester McCoy, on three counts, charging in the first count that on the evening of January 24, 1957, they assaulted one Kenneth Cullen, with intent to rob him, in the second count, that at the same time they shot Kenneth Cullen, with intent to wound him, and in the third count, that at the same time and as a part of the same attempted robbery, they shot at Victor C. Adcock with intent to wound him.

The appellant was prosecuted as an aider and abettor, under section 1.17 of the Ohio Revised Code, which reads: "Any person who aids, abets, or procures another to commit an offense may be prosecuted and punished as if he were the principal offender."

Immediately preceding the robbery, Richard Shimer, an F. B. I. agent, was in the Fisher market and observed the appellant, whom he did not know, leave the store. A few days later he identified this man in a blue Oldsmobile on the street. He took the license number of the car and followed the appellant to the Wayne hotel, where he roomed. Mr. Shimer gave this information to the police and it was from this slender clue that the crime was solved.

The police first contacted Shirley Hale, the woman with whom Floyd Cato, the appellant, was living. She was sometimes referred to as his purported or common-law wife. Through her all three of the men were identified and implicated. Floyd was then arrested.

In his statement of February 7th, Floyd told of going to the Fisher market to look it over for his brother who had said he would rob it. In this statement he involved himself as a participant in the crime, as well as his brother and Lester McCoy.

The evidence does not support his claim that he was told that he could not see his wife unless he made a statement. As a matter of fact, he did see his wife in the presence of the officers before he gave his first statement. The officers were holding her as a witness and would not let her talk to him until they had his story. She was held in the detention home rather than the jail. Their baby was put in the custody of the couple's own baby sitter, at the expense of the state. The wife and mother was taken to see the baby several times during the week in question. Floyd also saw the baby during this time. The only evidence with reference to a lawyer is that one of the police officers asked him if he wanted a lawyer and he said no.

He did not testify at the trial. The failure of a defendant in Ohio, in a criminal case, to take the witness stand in his own behalf "may be considered by the court and jury and may be made the subject of comment by counsel." Art. I, Section 10, Ohio Constitution of 1851. Thus he failed to tell his story of this alleged coercion when it was fresh in his mind.

We have reviewed the evidence of the trial and find that it preponderates against any coercion being used as a means of extorting confessions from the appellant. The evidence does not support any claim that the appellant was coerced by any promises of leniency or threats of what might happen to him or his wife and baby. The trial court was fully justified in holding the statements were made voluntarily.

Neither did the appellant establish, by his own testimony, a case for coercion before the District Judge. His testimony is lacking in detail and characterized by a vague memory.

We come now to the question of whether holding him from the 6th to the 11th was in itself coercion. We think

not. The first statement was given the day after his arrest, the second one on the second day, and the last one three days later. The first one involved him as a participant, the others only added details. Was he in fact coerced? We go back to the evidence. We find no means of subtle persuasion, no force, no sleepless nights, no promises of leniency, no mistreatment, and no threats against either him or his family. The accepted test of voluntariness requires appraisal of the facts of each particular case. Gallegos v. State of Nebraska, 342 U.S. 55, 65, 72 S.Ct. 141, 96 L.Ed. 86.

The police did violate section 2935.05 of the Ohio Revised Code and we do not condone this. This statute provides, in part, "When a * * * police officer has arrested a person without a warrant, he must, without unnecessary delay, take the person arrested before a court or magistrate having jurisdiction of the offense, and must make or cause to be made before such court or magistrate a complaint stating the offense for which the person was arrested."

■ The failure of the police to comply with this section does not invalidate a subsequent conviction on proper and sufficient evidence. City of Columbus v. Glenn, Ohio App., 102 N.E.2d 279; Lisenba v. People of State of California, 314 U.S. 219, 239, 62 S.Ct. 280, 86 L.Ed. 166; State v. Collett, Ohio App., 58 N.E. 2d 417.

"This delay in arraignment was held by the trial judge to be unreasonable as a matter of law and a violation of the statutes of the State of New York. However, such delay does not make a confession secured during such period of illegal detention necessarily inadmissible as a matter of New York Law." Stein v. People of State of New York, 346 U.S. 156, 186, 73 S.Ct. 1077, 1094, 97 L. Ed. 1522.

Finally, the appellant's wife and Lester McCoy, who pleaded guilty to all three counts, testified for the state. The appellant's brother pleaded guilty to the first two counts and went to trial on only the third count. He was cross-examined by the appellant's lawyer. Thus a strong case was made against the appellant and it was only necessary to show that he participated in some degree.

The questions presented here were reviewed on appeal in all of the courts available to the appellant and the decisions were adverse to him. Lisenba v. People of State of California, 314 U.S. at page 238, 62 S.Ct. 280, cited above.

In the Stein case, supra, 346 U.S. at page 182, 73 S.Ct. at page 1091, the Court said: "When the issue has been fairly tried and reviewed, and there is no indication that constitutional standards of judgment have been disregarded, we will accord to the state's own decision great and, in the absence of impeachment by conceded facts, decisive respect."

We find no violation of the appellant's rights under the Federal Constitution.

It has been held repeatedly by the Supreme Court that there is no violation of the fourteenth amendment, if state action is consistent with "fundamental principles of liberty and justice." Hebert v. State of Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270, and the following cases in which it was held that confessions were not coerced in violation of the fourteenth amendment. Lisenba v. People of State of California, 314 U.S. at page 240, 62 S.Ct. 280, supra; Lyons v. State of Oklahoma, 322 U.S. 596, 602, 64 S.Ct. 1208, 88 L.Ed. 1481; Gallegos v. State of Nebraska, 342 U.S. 55, 64, 72 S.Ct. 141.

At page 181, of 346 U.S., at page 1091 of 73 S.Ct., the Court said in the Stein case: "It is only miscarriages of such gravity and magnitude that they cannot be expected to happen in an enlightened system of justice, or be tolerated by it if they do, that cause us to intervene to review, in the name of the Federal Constitution, the weight of conflicting evidence to support a decision by a state court."

McNabb v. United States, 318 U.S. 332, 340, 341, 63 S.Ct. 608, 87 L.Ed. 819, and Mallory v. United States, 354 U.S. 449,

77 S.Ct. 1356, 1 L.Ed.2d 1479, were Federal cases, and can be distinguished from the state cases just cited.

The rule in the McNabb case, followed in Mallory, was not postulated on a violation of the "due process clause" of the fifth amendment to the Federal Constitution. Confessions in these cases were set aside under the Court's supervisory powers over District and Circuit Courts of Appeals. In the exercise of these powers the Court has, from the beginning of its history, formulated rules of evidence to be applied in federal criminal prosecutions.

In Gallegos v. State of Nebraska, 342 U.S. at page 64, 72 S.Ct. at page 147, the Court said: "Compliance with the McNabb rule is required in federal courts by this Court through its power of supervision over the procedure and practices of federal courts in the trial of criminal cases. That power over state criminal trials is not vested in this Court."

The judgment of the District Court will be affirmed.