**Application of Nathan JACKSON for a Writ of Habeas Corpus.**

United States District Court
S. D. New York.
May 22, 1962.

Daniel G. Collins, New York City, for petitioner.

Edward S. Silver, Dist. Atty., Kings County, William I. Siegel, Asst. Dist. Atty., of counsel, for respondent.

DAWSON, District Judge.

This is an application for a writ of habeas corpus initiated by an order to show cause. The petition urges that petitioner's constitutional rights were violated and that conviction must be set aside for three reasons: (1) his confession was involuntary, (2) the court's instructions to the jury on the question of voluntariness were inadequate, erroneous and prejudicial, and (3) the New York procedure for determining the voluntariness of confessions is violative of due process as a matter of law.

Petitioner was jointly indicted with one Nora Elliott by a grand jury of Kings County for murder in the first degree in the shooting and killing of William J. Ramos, Jr., a police officer, following the commission of the felony of robbery. Petitioner was convicted of murder in the first degree and sentenced to death. Elliott was convicted of manslaughter in the first degree and sentenced to a term in prison. Elliott did not appeal from the judgment of conviction. On appeal to the New York Court of Appeals on behalf of petitioner the judgment was affirmed (10 N.Y.2d 780, 219 N.Y.S.2d 621, 177 N.E.2d 59). A motion for re-

argument or for amendment of the remittitur so as to certify a federal constitutional question was denied by the New York Court of Appeals, People v. Jackson, 10 N.Y.2d 816, 221 N.Y.S.2d 521, 178 N.E.2d 234, on October 5, 1961 as to reargument but was granted as to amendment of the remittitur and the constitutional question was certified that the Court of Appeals had necessarily passed upon the voluntariness of certain confessions and had found that defendant's constitutional rights had not been violated. Application was made to the United States Supreme Court for a writ of certiorari which was denied on December 18, 1961, Jackson v. State, 368 U.S. 949, 82 S.Ct. 390, 7 L.Ed.2d 344. On February 22, 1962 the Court of Appeals denied a further motion for reargument and for a stay of execution pending the filing of a new petition for certiorari. People v. Jackson, 11 N.Y.2d 798, 227 N.Y.S.2d 1025, 181 N.E.2d 854. An application to Mr. Justice Harlan of the United States Supreme Court for a similar stay was denied by him on March 7, 1962. Jackson v. State, 82 S.Ct. 541, 7 L.Ed.2d 766. The instant petition for issuance of a writ of habeas corpus then followed. It would seem that petitioner has exhausted all remedies available to him.

The Court, in compliance with the opinion of the United States Supreme Court in Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1952), has examined the transcript of the state proceedings to determine whether the state processes had given full consideration to the issues and had resulted in a satisfactory conclusion. Where the record affords an adequate opportunity to weigh the sufficiency of the allegations and the evidence, and such consideration is given to the entire state record, there is no necessity for having a hearing on the application for a writ of habeas corpus. See 344 U.S. at p. 463, 73 S.Ct. 397. The Court has examined the entire record of the proceedings in the state court, consisting of 823 pages of printed transcript.

It appears from the transcript that petitioner Jackson entered a Brooklyn hotel

accompanied by Nora Elliott at about 1:00 A.M. on June 14, 1960. They registered at the hotel. As the clerk was about to show them a room, Jackson at the point of a gun robbed the clerk. He told Elliott to leave the hotel, which she did. The petitioner forced the clerk and several other people to an upstairs room and warned them to make no outcry after his departure. They, however, broke a window and began to shout. The police officer Ramos, hearing the alarm, intercepted Jackson as he was escaping from the hotel. Ramos endeavored to arrest Jackson. A fight ensued in the course of which Jackson shot Ramos twice, inflicting fatal wounds. Ramos, in turn, shot Jackson who was wounded but not killed. Jackson attempted to flee but was captured and taken to a hospital. While at the hospital he was interviewed by a detective. He said to the detective: "I shot the colored cop. I got the drop on him." (R. 1272.) This statement was made about 2:00 A.M. in the hospital. At about 3:55 A.M., in the hospital, Jackson was questioned by representatives of the District Attorney. There he made a statement which was taken down by a reporter of the District Attorney's office. The statement was transcribed and offered in evidence at the trial. When it was offered in evidence the court asked Jackson's attorney whether he had any objection to it. Jackson's attorney stated that he had no objection. (R. 1381.)

Jackson took the stand in his own behalf. He admitted commission of the robbery and the fact of the shooting of Ramos. He contended, however, that the robbery was all over at the time he left the hotel and the shooting was not in connection with the robbery. He tried to excuse the shooting by the assertion of intoxication. The jury rendered a verdict of guilty of murder in the first degree against Jackson, indicating that it rejected his defense.

The petition for a writ of habeas corpus raises merely questions relating to the voluntariness of the confession. It is hard to tell from the moving papers and the briefs submitted in support of the petition what confession petitioner is referring to. There was one confession made by Jackson at 2 o'clock in the morning when he stated to Detective Kaile as follows: 'I shot the colored cop. I got the drop on him." No objection was made to the introduction of this testimony. There was the other more detailed confession which was taken down in transcription by a stenographer of the District Attorney's office and which was introduced in evidence without objection by Jackson's attorney. This was taken at about 3:55 A.M. at the hospital. The important part of this confession was the following:

"Q. How many shots did you fire at the officer?

"A. I don't know.

"Q. Was it more than one?

"A. Yeah.

"Q. Who fired first, you or the police officer?

"A. I beat him to it.

"Q. How many times did you fire at him?

"A. I don't know; twice probably."

It is the contention of the petitioner that the confession was involuntary. It is urged that Jackson, at the time he made the statement to the representatives of the District Attorney's office, was suffering from loss of blood, thirst, severe pain of bullet wounds and the effects of certain drugs which had been administered to him to relieve the pain from which he was suffering.

■ The issue of the voluntariness of the confession was submitted to the jury by the trial court. There was certainly no clear indication that the confession was involuntary. The Court reaches this conclusion not merely upon the conclusion reached by the state courts of New York but by appropriate examination of the entire record of the trial. See People ex rel. Jennings v. Ragen, 358 U.S. 276, 277, 79 S.Ct. 321, 3 L.Ed.2d 296 (1959).

Although defendant's counsel made no objection to the admission of the confes-

sion at the time it was offered in evidence, the trial court nevertheless carefully instructed the jury as follows:

"I shall now give you the applicable law concerning such statement which the District Attorney claims is a confession on the part of Jackson, or an admission of Jackson.

"Jackson testified he was shot. He was under a sedative. He said he was refused water unless he answered the questions as they wanted him to answer them. He said he remembers some questions and answers, and denied others. He had no recollection as to some questions and answers. He said that the statement which the District Attorney claims to be a confession was obtained from him in violation of law. You have heard all the testimony on that point, as well as on every other point. Now let me give you the law.

"A confession of a defendant, says the law, whether in the course of a judicial proceeding, or to a private person, can be given in evidence against him unless made under influence of fear, produced by threats, or unless made on a stipulation of the District Attorney that he shall not be prosecuted therefor. Of course, in this case, there is no claim that the District Attorney made any such stipulation, so do not be concerned with that part of it.

"Under our law, a confession is not sufficient to warrant a conviction without additional proof that the crime charged has been committed.

\* \* \*

\* \* \* \* \* \*

"Under our law, a confession, even if true and accurate, if involuntary, is not admissible, and if it is left for the jury to determine whether or not it was voluntary, its decision is final. If you say it was involuntarily obtained, it goes out of the case. If you say it was voluntarily made, the weight of it is for you. So I am submitting to you as a question of fact

to determine whether or not (a) this statement was made by Jackson, or allegedly made by Jackson, whether it was a voluntary confession, and whether it was true and accurate. That decision is yours.

"Should you decide under the rules that I gave you that it is voluntary, true and accurate, you may use it, and give it the weight you feel that you should give it. If you should decide that it is involuntary, exclude it from the case. Do not consider it at all. In that event, you must go to the other evidence in the case to see whether or not the guilt of Jackson was established to your satisfaction outside of the confession, beyond a reasonable doubt.

\* \* \* \* \* \*

"I repeat to you again, the burden of proving the accuracy, truth, and the voluntariness of the confession always rests upon the prosecution." (R. 2248–2255)

Whether the confession was voluntarily made was one of the issues submitted to the jury. It was an issue argued by Jackson's counsel in his summation as follows:

"He tells you what happened when he got down there to the hospital. Well, he hold them he was hurt. He was gasping for breath, he says, breathing becoming difficult and couldn't talk very long. He says he doesn't remember talking to any detectives or anybody. Well, maybe he does and maybe he doesn't. I don't know, gentlemen. That's your responsibility."

We have, therefore, in summary, the following situation:

After the defendant was arrested, and while in the hospital, he made certain statements to police officers or a representative of the District Attorney's office. There is no clear and conclusive proof that these statements were extorted from him, or that they were given involuntarily. When evidence was introduced at his trial of the statements made by the de-

fendant no objection to the introduction of such evidence was made by his attorney, who was an experienced trial lawyer and a former judge. No request was made by counsel for the defendant for a preliminary hearing on the issue as to whether the statements were voluntary. Nevertheless the trial court, with proper instructions, submitted this issue to the jury. The jury convicted the defendant. There was evidence, in addition to the statements of the defendant, from which the jury could have concluded that the defendant was guilty.

Under those circumstances have the petitioner's constitutional rights been violated? As the United States Supreme Court said in Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1942):

"Review here deals with circumstances which require examination into the possibility as to whether the judge and jury in the trial court could reasonably conclude that the McAlester confession was voluntary. The fact that there is evidence which would justify a contrary conclusion is immaterial. To triers of fact is left the determination of the truth or error of the testimony of prisoner and official alike. * * *" 322 U.S. 596, at p. 603, 64 S.Ct. at p. 1212.

The New York procedure for determining whether the incriminating statements were voluntary is described in the opinion of the United States Supreme Court in Stein v. New York, 346 U.S. 156 at page 172, 73 S.Ct. 1077, at page 1086, 97 L.Ed. 1522, (1953) in the following language:

"The procedure adopted by New York for excluding coerced confessions relies heavily on the jury. It requires a preliminary hearing as to admissibility, but does not permit the judge to make a final determination that a confession is admissible. He may—indeed, must—exclude any confession if he is convinced that it was *not* freely made or that a verdict that it was so made would be against the weight of evidence. But, while he may thus cast the die against the prosecution, he cannot do so against the accused. If the voluntariness issue presents a fair question of fact, he must receive the confession and leave to the jury, under proper instructions, the ultimate determination of its voluntary character and also its truthfulness. People v. Weiner, 248 N.Y. 118, 161 N.E. 441. The judge is not required to exclude the jury while he hears evidence as to voluntariness, People v. Brasch, 193 N.Y. 46, 85 N.E. 809, and perhaps is not permitted to do so, People v. Randazzio, 194 N.Y. 147, 159, 87 N.E. 112, 117."

In the present case no request was made by defense counsel for a preliminary hearing. If one had been made it would undoubtedly have been granted by the trial court, in accordance with the New York rule. Defendant, however, apparently preferred to proceed on the basis of letting everything go before the jury. A similar situation existed in United States ex rel. Reid v. Richmond, 295 F.2d 83 (2d Cir. 1961), in which defense counsel made no objection to a confession being introduced in evidence. The court said:

" * * * Having made no objection, Reid should not now be heard to raise constitutional objections which he did not see fit to urge at the earlier stage. * * *

"Every defendant must, of course, be accorded a fair trial. But the state is also entitled to a fair trial. When, after an extended hearing, informed and experienced defense counsel has taken a position, and the state, in reliance on it, has tried its case accordingly, it would be unduly tipping the scales of justice against the state to permit a defendant to argue that his conviction must be vacated because his counsel should not have taken the position he did and should not have made the concessions on which the state acted. * * *"

■ The issue as to whether the incriminating statements were voluntary was submitted to the jury under proper instructions. Petitioner's argument here essentially is that the conclusions of the New York judge and jury were mistaken and that by reviewing the evidence this Court should, as a super-jury, find that the confession was coerced. This is not the function of a federal court. Stein v. New York, 346 U.S. 156, 180, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953).

■ The Court concludes there is no good reason to find that the confession of the defendant was involuntary, or that the court's instructions to the jury on the question of voluntariness were inadequate, erroneous or prejudicial, or that the New York procedure for determining the voluntariness of confessions is violative of due process as a matter of law.

The petition for a writ of habeas corpus is denied and the stay vacated.