Gerald PATE, Appellant,

v.

Ray PAGE, Warden of the Oklahoma State Penitentiary, Appellee.

No. 7517.

United States Court of Appeals
Tenth Circuit.

Dec. 18, 1963.

568

Kenneth B. Kienzle, Sr., Shawnee, Okl. (Melvin L. Wulf and David N. Ellenhorn, New York City, on the brief), for appellant.

Jack A. Swidensky, Asst. Atty. Gen. of Oklahoma (Charles Nesbitt, Atty. Gen., of Oklahoma, on the brief), for appellee.

Before PICKETT, BREITENSTEIN and SETH, Circuit Judges.

PICKETT, Circuit Judge.

The petitioner, Gerald Pate, was convicted of murder in the State Court of Pottawatomie County, Oklahoma, and sentenced to death. The judgment and sentence was affirmed by the Oklahoma Court of Criminal Appeals. 361 P.2d 1086, reh. denied 361 P.2d 1086. Following the affirmance, the District Court of Pittsburgh County, Oklahoma denied Pate's application for a writ of habeas corpus. Thereafter, in a habeas corpus proceeding filed directly in the Oklahoma Court of Criminal Appeals, the court considered the question of whether a confession made by the petitioner was voluntary and otherwise admissible in evidence. After an extensive hearing, including the testimony of numerous witnesses, the petition was denied. 371 P.2d 500. A petition for certiorari was denied by the Supreme Court of the United States, 373 U.S. 915, 83 S.Ct. 1304, 10 L.Ed.2d 415.

Having completely exhausted his state court remedies, the petitioner instituted this habeas corpus proceeding in the United States District Court for the Eastern District of Oklahoma, and a hearing was had at which petitioner was present. As in the state proceedings, it was alleged that petitioner's confession to the crime charged in the state court was involuntary and the result of coercion by the state officers in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States, and was erroneously admitted in evidence. The basis for the allegation is that the confession resulted from extensive, systematic and unlawful questioning by state officers after the arrest of petitioner and the detention and threatened prosecution of his mother and younger brothers, if he did not confess to the murder of a 15 year old girl. The identical questions were presented during the trial of the case,[1] were carefully considered by the Oklahoma Court of Criminal Appeals on direct appeal, 361 P.2d 1086, and again considered by that court in original habeas corpus proceedings. 371 P.2d 500. The case was

---

1. As is the custom in Oklahoma, the question of whether Pate's confession was voluntary was first considered by the trial judge in the absence of the jury, and found to be voluntary. The same question was then submitted to the jury. See Lyons v. Oklahoma, 322 U.S. 596, 64 S. Ct. 1208, 88 L.Ed. 1481, reh. denied 323 U.S. 809, 65 S.Ct. 26, 89 L.Ed. 645.

submitted to the District Court on the records made in the State Court proceedings and the application denied. This appeal followed.

When a state prisoner alleges in a Federal Court proceeding that a confession was obtained as a result of coercion in violation of the due process clause of the Fourteenth Amendment,

" * * * 'the question in each case is whether the defendant's will was overborne at the time he confessed,' Lynumn v. Illinois, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922. 'In short, the true test of admissibility is that the confession is made freely, voluntarily and without compulsion or inducement of any sort.' Wilson v. United States, 162 U.S. 613, 623 [16 S.Ct. 895, 40 L.Ed. 1090]. See also Bram v. United States, 168 U.S. 532 [18 S.Ct. 183, 42 L.Ed. 568]. And, of course, whether the confession was obtained by coercion or improper inducement can be determined only by an examination of all of the attendant circumstances." Haynes v. Washington, 373 U.S. 503, 513, 83 S.Ct. 1336, 10 L.Ed.2d 513.

While the federal courts are generally bound by factual determinations of state courts made on conflicting evidence, still, when the question of whether a coerced confession was admitted in evidence in violation of the Constitution of the United States is properly raised, such courts are duty bound to make an independent investigation and determine from the entire record whether the finding of the state court has substantial support in the evidence. Haynes v. Washington, supra;[2] Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037; Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265; Lyons v. Oklahoma, supra. In proper proceedings in federal court, the petitioner is entitled to a "trial type proceeding" to test the validity of the state detention. Faye v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770.

The record discloses that on September 21, 1959 the petitioner was arrested

2. In Haynes v. Washington, 373 U.S. 503, 515–516, 83 S.Ct. 1336, 10 L.Ed.2d 513, speaking of the voluntariness of confessions, the Supreme Court said:

"Our conclusion is in no way foreclosed, as the State contends, by the fact that the state trial judge or the jury may have reached a different result on this issue.

"It is well settled that the duty of constitutional adjudication resting upon this Court requires that the question whether the Due Process Clause of the Fourteenth Amendment has been violated by admission into evidence of a coerced confession be the subject of an *independent* determination here, see, e. g., Ashcraft v. Tennessee, 322 U.S. 143, 147–148 [64 S.Ct. 921, 88 L.Ed. 1192]; 'we cannot escape the responsibility of making our own examination of the record.' Spano v. New York, 360 U.S. 315, 316 [79 S.Ct. 1202, 3 L.Ed.2d 1265]. While, for purposes of review in this Court, the *determination of* the trial judge or of the jury will ordinarily be taken to resolve evidentiary conflicts and may be entitled to some weight even with respect to the ultimate conclusion on the crucial issue of voluntariness, we cannot avoid our responsibilities by permitting ourselves to be 'completely bound by state court determination of any issue essential to decision of a claim of federal right, else federal law could be frustrated by distorted fact finding.' Stein v. New York, 346 U.S. 156, 181 [73 S.Ct. 1077, 97 L.Ed. 1522]. As state courts are, in instances such as this, charged with the primary responsibility of protecting basic and essential rights, we accord an appropriate and substantial effect to their resolutions of conflicts in evidence as to the occurrence or nonoccurrence of factual events and happenings. This is particularly apposite because the trial judge and jury are closest to the trial scene and thus afforded the best opportunity to evaluate contradictory testimony. But, as declared in Ward v. Texas, 316 U.S. 547, 550 [62 S.Ct. 1139, 86 L.Ed. 1663], 'when, as in this case, the question is properly raised as to whether a defendant has been denied the due process of law * * * we cannot be precluded by the verdict of a jury from determining whether the circumstances under which the confession was made were such that its admission in evidence amounts to a denial of due process.' "

at his mother's home by state officers, executing a bench warrant issued because of his failure to appear for trial on a burglary charge.[3] Prior to the arrest, Mary Jane Haygood, a 15 year old girl, had disappeared and was last seen with the petitioner. Following the arrest he was taken to the town of Wewoka, Oklahoma where he consulted his attorney and was questioned as to his knowledge of the whereabouts of the Haygood girl. He denied having seen her after the date of her disappearance. Later he was removed to the county jail at Shawnee, Oklahoma. When the arrest was made, petitioner's mother and 16 year old twin brothers were brought to Shawnee and held for investigation until the next day. During the next five days Pate was questioned at length by different state and county officers, but continued to deny any connection with or knowledge of the disappearance of the Haygood girl. During this period, following the instructions of his attorney, he appeared in the state district court where he pleaded guilty to the burglary charge and was sentenced to serve a term of two and one-half years. On the afternoon of September 27th, an extensive search of the Pate farm was made by numerous citizens of the community. The body of the girl was found buried in a grave approximately ¼ mile from the Pate home. There was evidence that the girl had been dead for a number of days.

On the date the body was found, petitioner was again questioned by the officers, but continued to deny that he was implicated in any way. The questioning continued until sometime after midnight. During this time he consulted his attorney on two different occasions, and talked to his mother. Shortly thereafter, he admitted the murder of the Haygood girl and described in detail how it was accomplished, including the burial.[4]

When tried on the murder charge, petitioner's attorney objected to the admission of the confession in evidence upon the ground that it was not voluntary. It was argued that it resulted from the threats of county officials that the mother and twin brothers would be prosecuted as accomplices unless he confessed, and that he did confess upon the promise that there would be no such prosecution. Testimony to this effect was introduced, but this was categorically denied by state officers.[5] The trial court overruled the objection and admitted the confession in evidence.

All of the questioning before the murdered girl's body was found was limited to his knowledge of her whereabouts. The officers were trying to locate her. We find no indication in the record that there was any evidence pointing to murder until the body was found. We have no reason to believe that this questioning

3. When the officers found the petitioner at his mother's home, he was hiding in a closet and had in his posession two loaded 22 caliber rifles.

4. After he had confessed to the murder, Pate talked to his attorney in Wewoka, Oklahoma, and did not repudiate his confession.

5. During the original trial, on cross-examination, Pate's testimony was to the effect that he was told his mother and brothers would not be prosecuted for complicity in the murder if it were determined that they were in no way implicated. In this connection, the Oklahoma Court of Criminal Appeals said, 361 P.2d 1086, 1096:

"On cross-examination defendant testified that he understood his parents would

not be held if they were not implicated, and that they were held in protective custody, or for investigation. (It appears from the record that though defendant and Mary Jane were in the old hay barn on the Milam farm [Mrs. Milam is defendant's mother] the Milams knew nothing of it. The defendant would slip into the house when they were away and get food and supplies for Mary Jane and himself.) Under these conditions it is easy to understand why people who did not know this would suspect the parents of harboring defendant and be incensed against them, and also why they would be under investigation. But the record is clear that none of the members of his family knew of the defendant's crime until the body was found and defendant was arrested."

would have had any influence upon the later confession.

The Oklahoma Court of Criminal Appeals has given very careful consideration to the questions presented here on two different occasions. The facts are set out in both decisions in minute detail. It was found in both instances that the confession was made freely, voluntarily, and without compulsion. Judge Rice, an experienced Judge of the United States District Court for the Eastern District of Oklahoma, concluded likewise. We have examined the record and reached the same conclusion. There is no suggestion of brutality or mistreatment of Pate, and it is quite obvious that before he confessed he was not only allowed to, but did consult his attorneys, and anyone else that he desired.

The stay of execution heretofore entered is hereby vacated.

Affirmed.