UNITED STATES ex rel. Samuel Tito WILLIAMS, Relator,

v.

J. Edwin LAVALLE, Warden of Clinton Prison, Dannemora, New York, Respondent.

Civ. No. 7275.

United States District Court
N. D. New York.

Feb. 2, 1959.

Samuel Tito Williams, petitioner, pro se.

Louis J. Lefkowitz, Atty. Gen. of New York, Edward S. Silver, Dist. Atty., Kings County, Brooklyn, N. Y., (Raymond B. Madden, Asst. Atty. Gen., William I. Siegel, Asst. Dist. Atty., Brooklyn, N. Y., of counsel), for respondent.

FOLEY, District Judge.

This petition for a writ of habeas corpus presents a challenge, which has become commonplace in this District Court, to a murder first degree judgment of conviction of the State of New York. The petitioner was found guilty of felony murder by a jury on January 22, 1948, and the said judgment of conviction and sentence was rendered against him in the County Court of Kings County on March 2, 1948. County Judge Goldstein, who presided at the trial, in a lengthy and detailed sentencing statement based upon investigative and probation department reports disclosing a criminal and sordid background, rejected the recommendation of life imprisonment made by the jury and sentenced the petitioner to death. The Court of Appeals of New York affirmed without opinion (People of State of New York v. Williams, 298 N.Y. 803, 83 N.E.2d 698), amended its remittitur (298 N.Y. 863, 84 N.E.2d 446), and denied motion for reargument (300 N.Y. 460, 88 N.E.2d 325). Different from the usual appellate pattern in these most serious of criminal cases, direct appeal was entertained by the United States Supreme Court on the constitutional challenge to the action of the County Judge basing his sentence of death upon information supplied by witnesses with whom the defendant (petitioner) had not

been confronted or allowed to cross-examine and rebut. In a substantial opinion by Justice Black, the Supreme Court rejected the challenge and affirmed the Court of Appeals of New York, Justices Murphy and Rutledge dissenting. Williams v. People of State of New York, 1949, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, rehearing denied 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed. 1760, 338 U.S. 841, 70 S.Ct. 34, 94 L.Ed. 514. In November, 1949, Governor Thomas E. Dewey commuted the death sentence to life imprisonment. The matter remained at rest until the filing of this handwritten petition in this district court in 1958.

■ The grave challenge here is the same one based upon the issue of coerced and involuntary confessions with the sharp dispute of fact that was decided against New York in United States ex rel. Caminito v. Murphy, 2 Cir., 222 F.2d 698, certiorari denied 350 U.S. 896, 76 S.Ct. 155, 100 L.Ed. 788, and United States ex rel. Wade v. Jackson, 2 Cir., 256 F.2d 7, certiorari denied 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed.2d 1158. The solution of these serious problems is always difficult because in the main it assays the fact finding functions of the federal court against those of State juries and State judges. The historic sensitivity and delicacy of such review as it affects federal-state comity and relations, particularly the review by a single District Judge of a State's highest court judgments, is set forth in Darr v. Burford, 339 U.S. 200, 206–208, 217, 70 S.Ct. 587, 94 L.Ed. 761. Much contact with these situations clearly evidences to me that resentment and antipathy increase to lower court review when such review necessarily has overtones of a superior or more competent, or even infallible fact finding analysis in comparison to that of the State tribunals. See People v. Bonino, 1 N.Y.2d 752, 753, 135 N.E.2d 51, Desmond dissenting. Such fact finding superiority and wisdom would, I am sure, be accepted much more graciously if promulgated by the highest court in the land in these tense murder cases. Recent cases of the Supreme Court point up the divergent inferences and conclusions that are drawn in the highest court as to whether a confession was voluntary or involuntary from the variable and close factual situations. Thomas v. State of Arizona, 356 U.S. 390, 78 S.Ct. 885, 2 L.Ed.2d 863, rehearing denied 357 U.S. 944, 78 S.Ct. 1379, 2 L.Ed.2d 1557 (confession held voluntary 5–4); Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (confession held voluntary 5–4); Payne v. State of Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed. 2d 975 (confession held void 7–2); Ashdown v. State of Utah, 357 U.S. 426, 78 S.Ct. 1354, 2 L.Ed.2d 1443 (confession held voluntary 7–2). However, as Chief Judge Clark recently stated in United States ex rel. Eckwerth v. Denno, 2 Cir., 261 F.2d 511, certiorari denied 79 S.Ct. 355, the obligation is still present in the lower federal courts despite the state jury's ultimate finding that the confessions were voluntary to make an independent examination into the constitutional question of voluntariness from the facts and circumstances revealed by the undisputed evidence.

After the petition was filed herein, as is my practice, I issued an order to show cause to the District Attorney of Kings County and the Attorney General of New York. Affidavits in opposition to the grant of the writ have been filed in behalf of both. The District Attorney also furnished to the court two bound volumes from his office containing the complete record and proceedings at the trial, the briefs filed in the Court of Appeals of New York in behalf of the petitioner including one of the American Civil Liberties Union, amicus curiae, the transcript of record filed in the United States Supreme Court on appeal and the opposing briefs filed there and the two petitions for rehearing. I have read it all.

Before going to the merits as I will, there must be discussed a substantial point raised by Assistant District Attorney William I. Siegel, a distinguished career veteran of the staff of the District Attorney of Kings County, to whom I now express my sincere appreciation be-

cause in several instances in the past and again in this one, he has made the long trips from Brooklyn to Albany to present his oral argument and furnish the necessary complete records for decision which without his cooperation are always difficult to obtain. He raises a substantial contention as to the exhaustion of state remedies pursuant to 28 U.S.C.A. § 2254.

The issue of coerced and involuntary confession was strongly pressed in detail in the briefing to the Court of Appeals by the attorneys for petitioner Williams, and the Court of Appeals by its affirmance passed upon such point. However, the appeal to the Supreme Court seems to revolve in the briefing there and in the abbreviated transcript of record solely on the constitutional question as to the manner in which the sentencing Judge rejected the recommendation of the jury and imposed the death sentence. Except for this one appeal and decision therein, my search does not indicate any separate application for certiorari to the United States Supreme Court on the issue of coerced confession. Justice Black seemingly comments on the record of a complete trial with these statements: "The narrow contention here makes it unnecessary to set out the facts at length. The record shows a carefully conducted trial lasting more than two weeks in which (Williams) was represented by three appointed lawyers who conducted his defense with fidelity and zeal. The evidence proved a wholly indefensible murder committed by a person engaged in a burglary. * * * Appellant was found guilty after a fairly conducted trial." Williams v. People of State of New York, supra, 337 U.S. at pages 243, 252, 69 S.Ct. at page 1081. These general statements might seem to indicate the Supreme Court reviewed the whole matter, particularly the fairness of the trial, but the narrow compass of its appellate procedures does not allow this freedom as to questions not expressly put to it, and it seems clear the coerced confession claim was not ruled upon. Original misapprehension on my part as to exhaustion allowed the writ to be entertained without requiring the filing of a petition for certiorari. However, it does not seem wise at this stage to shunt off an indigent prisoner, who only knows that the United States Supreme Court denied his appeal and two petitions for rehearing when he was represented by able lawyers. Also, the necessary records are before me after much effort. I am usually a strong advocate that such requirement be met as prescribed in Darr v. Burford, supra, particularly when a District Judge has the great comfort to see the Supreme Court grant a petition for certiorari and leave to proceed in forma pauperis recently in a similar murder conviction on a confession issue, although with no claim of coercion. People v. Spano, 4 N.Y.2d 256, 150 N.E.2d 226, certiorari granted 358 U.S. 919, 79 S.Ct. 293, 3 L.Ed.2d 238. It has been pointed out there is some flexibility in the normal rule that certiorari must be applied for in the United States Supreme Court before habeas corpus is sought in the District Court and I think there is sufficient present to exercise my discretion in favor of the petitioner on this exhaustion aspect. Thomas v. State of Arizona, 356 U.S. 390, Note 1, 78 S.Ct. 885, 2 L.Ed.2d 863.

The petitioner was charged with and convicted of the brutal slaying of a young girl fifteen years of age which occurred on the night of April 19, 1947. The young girl had been severely beaten over the head with an iron bar by a burglar who entered her bedroom and awakened her from sleep. She never regained consciousness after the bludgeoning and died eight hours later. Her ten-year old brother, who was sleeping in the same bedroom was awakened during the assault and slaying of his sister, and he was also struck on the head by the intruder and injured. The petitioner was taken into police custody approximately five months later on September 8, 1947 at 2:30 A.M. in the Borough of Brooklyn, when acting suspiciously. The entire area in which he was apprehended by the police had been under the surveillance and net of many police officers in their effort

to capture the perpetrator of many burglaries over a period of months in this part of Brooklyn.

It is undisputed that from the time of this apprehension in the early hours of Monday morning, September 8, 1947, to about noontime or 12:30 P.M. of Tuesday, September 9, 1947, the petitioner was detained in the custody of the police, approximately thirty-four hours. It was during this period of time that the police obtained his own longhand confession of the crime (People's Exhibit 17). Then a detailed question and answer statement was taken later by the Assistant District Attorney in their presence who had the petitioner re-enact the crime at the scene as a part of this question and answer confession. (People's Exhibit 23). It was during the time before these confessions were made that the petitioner testified at the trial to the most wicked beatings and tortures that could be inflicted upon a human being. Of course, under our federal approach, this is the inviolate area of disputed facts because each police officer denied any such beatings or torture and stated the confessions in each instance were freely and voluntarily made. It does seem to me, however, that when we add up the undisputed facts to reach our federal conclusion one way or the other, we must necessarily get back to the disputed facts and rationalize them as to beating and torture, which supposedly is not within our province when denied.

I have read through the entire record but it seems needless for me to refer to it for the disputed or undisputed facts surrounding the confessions which are so seriously challenged. The versions of the prosecution and that of the petitioner (appellant) as to the facts and circumstances accompanying the obtaining of these confessions are ably and masterfully set forth with references to the record in the briefs presented to the Court of Appeals of New York (Appellant's Brief, pages 10–25; Respondent's (Prosecution) Brief, pages 6–30). Each side, of course, marshals the facts and circumstances from a partisan viewpoint, but the combination gives a good summary of all the conflicting testimony and indicates again that experienced lawyers, like Judges, can argue persuasively to either conclusion.

To continue the search for undisputed facts, it is clear that the petitioner had no sleep during this period of detention. Food is somewhat in the disputed area. He underwent questioning throughout the day and night he was held, but admittedly he was not questioned about the murder of the girl until 6:00 P.M. of the evening of September 8. During the day most of the time he was interrogated by the police as to robberies, burglaries and other crimes and was taken in an automobile by the detective to the scenes where burglaries had been committed. There is enough controversy present as to his physical condition, appearance and injuries and where he sustained them for me to leave that issue alone. The photographs taken at the re-enactment of the crime, the failure to complain to the arraigning magistrate, the testimony of the admittance clerk as to his statements concerning his physical condition, particularly rheumatic fever swelling in his legs, the injuries described by the jail physician inconsequential in relation to the terrible beatings and torture claimed by the petitioner, the testimony of the Assistant District Attorney and the stenographer as to his physical appearance and demeanor when the second statement was made, and other witnesses who observed him the following morning, seem to me to weigh heavily against him. It is also significant to me that his mother who saw him after the re-enactment of the crime and to whom he testified he told about the beatings did not take the stand in his defense, although apparently present in the courtroom. There is obvious integrity in the handwritten confession with the peculiarly misspelled words that gives little credence to its manufacture by the police.

To me, this is another example of a sharp dispute of fact with adequate support in the record for the State to prevail in its position that the confes-

586

sions were freely and voluntarily obtained. Again, I cannot add up a combination of undisputed factors that reasonably lead me to the conclusion that coercion and intimidation have been demonstrated with such degree of clarity as to sustain this petition and void the judgment of conviction.

It is important to my reasoning and conclusion that the trial of this petitioner was conducted as fairly as any Judge, state or federal, in the country could conduct it. The charge unequivocally explained the law as to coerced and involuntary confessions, and instructed the jury specifically that if they had reasonable doubt as to the voluntariness of the confessions they should acquit the defendant. The most eminent criminal counsel assigned by the Courts of New York took no exception to the charge, and the several requests to charge elaborated again upon the issue of coercion and intimidation and were charged without hesitation or qualification by the Judge. Although it may be extraneous to my simple duty to re-analyze facts, I am also bolstered in my conclusion by the impression of Justice Black that the petitioner was found guilty after a fairly conducted trial and the characterization in the commutation statement of Governor Dewey that " * * * the defendant's guilt has been established. * * * "

The order to show cause is dismissed and the petition for habeas corpus is denied. The papers herein shall be filed without the usual requirement for the prepayment of fees. Because of the many imponderables in these factual situations, and from past experience in the Wade and Caminito cases, I do hereby grant a certificate of probable cause to enable the petitioner to review this decision in the Court of Appeals, Second Circuit, if he be so advised. The two bound volumes furnished by the District Attorney of Kings County and used by me in this review shall be returned to his office with the request that such volumes be made available to the Court of Appeals if and when the appeal is taken.

It is so ordered.