UNITED STATES of America ex rel. Samuel Tito WILLIAMS, Petitioner,

v.

Edwin M. FAY, Warden of Greenhaven Prison, Stormville, New York, Respondent.

United States District Court
S. D. New York.
Nov. 8, 1962.

**360**

Petitioner submitted on papers and record.

Edward S. Silver, Dist. Atty., Kings County, William I. Siegel, Asst. Dist. Atty., affiant, submitted affidavit in opposition for State of New York.

DAWSON, District Judge.

This is a petition for a writ of habeas corpus arising out of a conviction of first degree murder in the State of New York. The petitioner was found guilty of felony murder by a jury on January 22, 1948 in the County Court of Kings County. Sentence was imposed on March 2, 1948 by County Court Judge Goldstein who had presided at the trial. Based upon probation department reports which disclosed a criminal background, Judge Goldstein rejected the recommendation of the jury that the petitioner be sentenced to life imprisonment and instead imposed the death sentence.

The Court of Appeals of New York affirmed the conviction without opinion (People of the State of New York v. Williams, 298 N.Y. 803, 83 N.E.2d 698), amended its remittitur (298 N.Y. 863, 84 N.E.2d 446) and denied motion for reargument (300 N.Y. 460, 88 N.E.2d 325). The case then went to the United States Supreme Court on the narrow issue of whether it was constitutional for a trial judge to base sentencing upon the report of witnesses that the defendant had not cross-examined or confronted. The Supreme Court rejected the challenge and affirmed the Court of Appeals of New York. Williams v. People of the State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), rehearing denied 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed. 1760 and 338 U.S. 841, 70 S.Ct. 34, 94 L.Ed. 514. In November 1949 Governor Dewey commuted the death sentence to life imprisonment.

No further legal action was undertaken until the petitioner filed a petition for habeas corpus in 1958 in the Northern District of New York. United States ex rel. Williams v. LaValle, 170 F.Supp. 582 (N.D.N.Y.1959). The petition was opposed by the state of New York on two grounds: (1) there was no merit in petitioner's claim and (2) petitioner had failed to exhaust his state remedies.[1]

Judge Foley rejected the latter argument of the State of New York and denied the petition on the merits. A certificate of probable cause was granted and petitioner appealed to the Court of Appeals, Second Circuit. Williams v. LaValle, 276 F.2d 645 (2d Cir., 1960). The court did not consider the merits of the controversy but affirmed Judge Foley's denial of the petition on the ground that the prisoner had not exhausted his state remedies.

The United States Supreme Court denied a writ of certiorari. United States ex rel. Williams v. LaValle, 364 U.S. 922, 81 S.Ct. 287, 5 L.Ed.2d 261 (1960). The Court of Appeals of New York then denied petitioner's motion for reargument of the original appeal. People v. Williams, 11 N.Y.2d 888, 227 N.Y.S.2d 1025, 182 N.E.2d 415 (1962). Petitioner next sought a writ of certiorari based on New York's failure to hear reargument. This was likewise denied. Williams v. United States, 370 U.S. 960,

1. 28 U.S.C.A. § 2254.

82 S.Ct. 1614, 8 L.Ed.2d 826 (1962). A motion was also made to the Kings County Court which denied petitioner's motion in the nature of coram nobis to vacate the judgment.

Petitioner now brings the instant petition for a writ of habeas corpus and the State of New York, while opposing the petition on its merits, does not now claim that the petitioner has failed to exhaust his state remedies.

The question raised by this petition is not a novel one. It seeks to show that the confession given by the defendant and used against him at the trial was coerced and therefore inadmissible. Petitioner also claims that there was illegal delay in arraignment and that his lack of counsel at his first arraignment rendered the entire trial invalid.

The record of the trial of the petitioner fills two bound volumes. In addition, there are briefs submitted to the New York Court of Appeals, including one by the American Civil Liberties Union as amicus curiae in behalf of the petitioner, the transcript of record filed in the United States Supreme Court on appeal and the opposing briefs and the two petitions for rehearing. Lastly, there are the affidavits of petitioner and the State of New York.

 In compliance with the opinion of the United States Supreme Court in Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1952), this court has examined the transcript of the state proceedings. Since the record in this instance affords an adequate opportunity to weigh the sufficiency of the allegations and the evidence, there is no necessity for a hearing on the application for a writ of habeas corpus. Brown v. Allen, supra, at page 463, 73 S.Ct. at page 410, 97 L.Ed. 469. See Application of Jackson, 206 F.Supp. 759 (S.D.N.Y.1962), aff'd, United States ex rel. Jackson v. Denno, 309 F.2d 573 (2d Cir., 1962).

While much of what transpired is in dispute, certain facts remain unchallenged. The petitioner was tried for the murder of a fifteen year old girl which took place on the night of April 19, 1947. A burglar entered the premises and began to rifle the contents of a dresser. The girl, who was asleep, awakened and attacked the prowler. He responded by beating her over the head with an iron bar. The girl never regained consciousness and died several hours later in the hospital. Her younger brother, aged 10, also awoke and was struck by the burglar as he lay in bed.

In the following months a number of burglaries took place in the same section of Brooklyn. The entire area was under surveillance by the police for that reason. Petitioner was taken into custody on September 8, 1947 in the early hours of the morning. He was brought to the police station and was kept in custody until his arraignment before a magistrate in Felony Court at about noon on September 9, 1947. During the 34 hours that the petitioner was in the custody of the police he twice confessed to the murder. After extensive questioning petitioner wrote his own longhand confession. Then an assistant district attorney was summoned, together with a stenographer, and a detailed statement was taken from petitioner. In the company of the police and the assistant district attorney, the petitioner was taken from the station house to reenact the crime at the scene.

It is during the period of time in the custody of the police that the petitioner claims he was unmercifully beaten and tortured. This was denied by the assistant district attorney and all the police officers who took the stand. The police do not deny that the petitioner went without sleep for the entire period and that his consumption of food and drink was not extensive.

When the petitioner was first brought to the police station he was not questioned about the murder. Instead, the police concentrated their questions on the various burglaries that had taken place in the neighborhood. At one point

petitioner was taken by automobile to the scenes of various crimes in the hope that someone could identify him as the perpetrator.

The interrogation concerning the homicide commenced at about 6:00 P.M. on September 8, 1947 and a longhand confession was obtained within about four hours. At this point the district attorney's office was called and petitioner gave a detailed statement at about midnight.

At the trial petitioner took the witness stand and testified at great length concerning the alleged police brutality. Petitioner exhibited to the jury the bruises and scars which he stated remained as a result of the alleged beatings. In rebuttal to this contention the police and assistant district attorney testified as to the lack of any coercion. Further, there was testimony of the admittance clerk of the Raymond Street jail to which petitioner was committed following his arraignment in Felony Court. According to that testimony petitioner complained only of swollen legs caused by rheumatic fever. There was also testimony by the jail physician who examined the petitioner and while he did find some injuries, these were inconsequential when compared to the torture described by the petitioner. Defense counsel introduced a series of photographs taken of petitioner on September 20, 1947. This was a result of an order signed by Judge Leibowitz of the County Court when petitioner was arraigned in that court on September 12th.

The charge to the jury fully explained the applicable law:

"A confession of a defendant, whether in the course of judicial proceedings or to a private person can be given in evidence against him, unless made under the influence of fear produced by threats or unless made upon a stipulation of the District Attorney that he shall not be prosecuted therefor; but it is not sufficient to warrant his conviction without additional proof that the crime charged has been committed.

\* \* \*

"If you decide that such confession or admission was made as the result of fear induced by threats, duress, or violence, or induced by unnecessary and illegal delay in arraignment, the confession so obtained cannot be used against the defendant and is to be disregarded even if you believe it to be true. No confession is admissible unless it is voluntary. Its primary meaning imports a condition of mind that is free and unconstrained by fear, or inspired by false hope, or threats or violence, or by illegal and unnecessary delay in arraignment. At any rate, it is a question of fact for you, the jury, to determine. You must also determine and decide, if you do accept such confessions and decide that it was made voluntarily, whether or not the confessions are true. Of course, if you decide that the confessions were not voluntary or not true, you must acquit the defendant." Trial Record, pp. 1143–46.

At the conclusion of this charge two of the three counsel appointed by the court to defend petitioner found no exception to the charge as given. One requested that additional instruction be given on the issue of coercion and the trial judge so instructed the jury. At this point all counsel in the case were satisfied that the jury had been correctly instructed on this matter.

The burden of proof placed upon a petitioner for a writ of habeas corpus is set out by the United States Supreme Court in Brown v. Allen, supra:

"As the burden of overturning the conviction rests on the applicant, he should allege specifically, in cases where material, the uncontradicted evidentiary facts appearing in the record upon which is based his allegation of denial of constitutional

rights." 344 U.S. 443, fn. p. 458, 73 S.Ct. 397, pp. 407, 408, 97 L.Ed. 469.

The need for a lack of conflict on the record was again pointed out later in the same opinion.

"In determining whether a confession has been used by the state in violation of the constitutional rights of a petitioner, a United States court appraises the alleged abuses by the facts as shown at the hearing **or** admitted on the record." 344 U.S. 443, at p. 475, 73 S.Ct. 397, at pp. 416, 417, 97 L.Ed. 469.

All the State of New York must show in support of its contention that the petition for a writ of habeas corpus be denied is that a jury upon correct instructions could reasonably find that the confession was not coerced. This is what the United States Supreme Court stated in Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1942):

"Review here deals with circumstances which require examination into the possibility as to whether the judge and jury in the trial court could reasonably conclude that the McAlester confession was voluntary. The fact that there is evidence which would justify a contrary conclusion is immaterial. To triers of fact is left the determination of the truth or error of the testimony of prisoner and official alike. * * *" 322 U.S. 596, at p. 603, 64 S.Ct. 1208, at pp. 1212, 1213, 88 L.Ed. 1481.

■■ The issue of coercion was fairly presented to the jury under proper instructions. The function of a federal court is not to sit as a super-jury and as such to conclude that the confession was coerced. Stein v. New York, 346 U.S. 156, 180, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953).

When the United States Supreme Court heard argument in this case, it was on the narrow issue of the constitutionality of the sentencing procedure employed by the State of New York. In passing upon that question the whole record was apparently read. While the Court was not making a determination on the merits, it is significant that Mr. Justice Black, speaking for the Supreme Court, stated:

"The narrow contention here makes it unnecessary to set out the facts at length. The record shows a carefully conducted trial lasting more than two weeks in which appellant [Williams] was represented by three appointed lawyers who conducted his defense with fidelity and zeal. The evidence proved a wholly indefensible murder committed by a person engaged in a burglary. * * *

* * * * * *

"Appellant was found guilty after a fairly conducted trial. * * *" Williams v. People of State of New York, 337 U.S. 241, at pp. 243, 252, 69 S.Ct. 1079, at pp. 1081, 1085, 93 L.Ed. 1337.

Judge Foley also passed on the merits of the original petition for habeas corpus and vacated the petition at that time. This was not technically a determination on the merits since the Court of Appeals for the Second Circuit in affirming the denial did so on the ground that the petitioner had not exhausted his state remedies. Judge Foley summed up his analysis of the record as follows:

"To me, this is another example of a sharp dispute of fact with adequate support in the record for the State to prevail in its position that the confessions were freely and voluntarily obtained. Again, I cannot add up a combination of undisputed factors that reasonably lead me to the conclusion that coercion and intimidation have been demonstrated with such degree of clarity as to sustain this petition and void the judgment of conviction.

"It is important to my reasoning and conclusion that the trial of this petitioner was conducted as fairly as any Judge, state or federal, in the country could conduct it. The charge unequivocally explained the law as to coerced and involuntary

confessions, and instructed the jury specifically that if they had reasonable doubt as to the voluntariness of the confessions they should acquit the defendant. The most eminent criminal counsel assigned by the Courts of New York took no exception to the charge, and the several requests to charge elaborated again upon the issue of coercion and intimidation and were charged without hesitation or qualification by the Judge." United States ex rel. Williams v. LaValle, 170 F.Supp. 582, at pp. 585–586.

It is stipulated by petitioner and the State of New York that petitioner was in the custody of the police for a period of 34 hours before his arraignment in Felony Court. The effect of such delay was passed upon in Brown v. Allen, supra, at page 476, 73 S.Ct. at page 417, 97 L.Ed. 469:

"* * * If the delay in the arraignment of petitioner was greater than that which might be tolerated in a federal criminal proceeding, due process was not violated. Under the leadership of this Court a rule has been adopted for federal courts, that denies admission to confessions obtained before prompt arraignment notwithstanding their voluntary character. McNabb v. United States, 318 U.S. 332 [67 S.Ct. 608, 87 L.Ed. 819]; Upshaw v. United States, 335 U.S. 410 [69 S.Ct. 170, 93 L.Ed. 100]. Cf. Allen v. United States, 91 U.S.App.D.C. 197, 202 F.2d 329. This experiment has been made in an attempt to abolish the opportunities for coercion which prolonged detention without a hearing is said to enhance. But the federal rule does not arise from constitutional sources. The Court has repeatedly refused to convert this rule of evidence for federal courts into a constitutional limitation on the states. Gallegos v. Nebraska, 342 U.S. 55, 63–65 [72 S.Ct. 141, 96 L.Ed. 86]. Mere detention and police examination in private of one in official state custody do not render involuntary the statements or confessions made by the person so detained. Petitioner's constitutional rights were not infringed by the refusal of the trial court to exclude his confessions as evidence."

The trial court in the instant case, however, went beyond the dictates of the United States Supreme Court in charging the jury concerning the effect of an illegal or unnecessary delay in arraignment.

"You have heard reference made during the course of this trial to the delay in the arraignment of the defendant. Under our law, the defendant must in all cases be taken before the Magistrate without unnecessary delay. * * *

"No confession is admissible unless it is voluntary. Its primary meaning imports a condition of mind that is free and unconstrained by fear, or inspired by false hope, or threats of violence, or by illegal and unnecessary delay in arraignment." Trial Record, pp. 1144–46.

■ Petitioner's final contention concerns his lack of counsel at the arraignment. The United States Supreme Court recently addressed itself to this issue. Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). The opinion states that in a capital case in the State of Alabama an indigent accused is entitled to appointed counsel at every stage of the proceeding, including arraignment. The opinion of the Court makes it clear that the decision rests in large measure on the law of Alabama which denies a defendant certain defenses unless they are pleaded at the arraignment:

"Arraignment under Alabama law is a critical stage in a criminal proceeding. It is then that the defense of insanity must be pleaded (15 Ala. Code § 423), or the opportunity is lost. Morrell v. State, 136 Ala. 44, 34 So. 208. Thereafter that plea may not be made except in the dis-

cretion of the trial judge, and his refusal to accept it is 'not revisable' on appeal. Rohn v. State, 186 Ala. 5, 8, 65 So. 42, 43. Cf. Garrett v. State, 248 Ala. 612, 614–615, 29 So. 2d 8, 9. Pleas in abatement must also be made at the time of arraignment. 15 Ala.Code § 279. It is then that motions to quash based on systematic exclusion of one race from grand juries (Reeves v. State, 264 Ala. 476, 88 So.2d 561), or on the ground that the grand jury was otherwise improperly drawn (Whitehead v. State, 206 Ala. 288, 90 So. 351), must be made." 368 U.S. 52, at pp. 53–54, 82 S.Ct. 157, at page 158, 7 L.Ed.2d 114.

Under New York procedure petitioner was arraigned twice in Felony Court before a Magistrate and three days later in County Court. Petitioner admits that at the second arraignment he was represented by private counsel hired by his mother and approved of by petitioner. See pages 734–740 and 913–929 of the trial record.

It is agreed that petitioner was not represented by counsel at his first arraignment in Felony Court. Petitioner testified that at that arraignment he was advised that he had a right to counsel and a right to communicate with counsel and with friends and relatives. Petitioner was also advised that he could secure an adjournment to obtain counsel if he desired. (Pages 948–959 of the trial record).

The first arraignment in New York is essentially a committing procedure which allows the state to confine an accused prior to an indictment being handed down. There must be some stage where an accused who does not have counsel is advised of his right to secure one. This was done at the arraignment in Felony Court. By the time the indictment was handed down the defendant had had a conference with his private attorney. (Trial record, page 919).

This first arraignment is not "a critical stage in a criminal proceeding." [2] No defenses are waived by a failure to plead them at this stage in the proceedings. Since petitioner was assisted by counsel at his second arraignment his constitutional rights were not abridged and his conviction must be upheld.

The petition for habeas corpus is denied. The papers herein shall be filed without the usual requirement for the prepayment of fees. A certificate of probable cause is hereby granted to allow petitioner to review this decision in the Court of Appeals, Second Circuit. The bound volumes furnished by the District Attorney of Kings County shall be returned to him to be supplied to the Court of Appeals if review of this decision is taken by the petitioner.

So ordered.

---

2. Hamilton v. Alabama, 338 U.S. 52, at p. 54, 82 S.Ct. 157, at p. 159, 7 L.Ed.2d 114.