**Jimmy ROGERS, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15867.**

Court of Criminal Appeals of Oklahoma.

Aug. 31, 1971.

**370**

Marion M. Dyer, Tulsa, for plaintiff in error.

Larry Derryberry, Atty. Gen., Raymond Naifeh, Asst. Atty. Gen., S. M. Fallis, Jr., Dist. Atty., for defendant in error.

BUSSEY, Presiding Judge:

Jimmy Rogers, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County for the offense of Grand Larceny. His punishment was fixed at five years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

The defendant waived jury trial, and the transcript of the testimony from the preliminary Hearing by agreement of both parties was submitted to the court for consideration.

Dean Wright, the manager of Zales Jewelry Store, located in a suburban shopping center in Tulsa, Oklahoma, testified that the defendant came to the store on July 9, 1969, and pretended to be interested in buying unset diamonds. The manager showed him a pouch containing a quantity of unset stones; the evidence showed that the pouch was kept in a drawer, and the defendant saw the manager take the pouch from the drawer, and after examining the diamonds, he saw the manager return the pouch to the same drawer. The following day, the defendant returned, accompanied by one Curley Gordon. At this time, defendant wanted to see some merchandise that was in a part of the store away from the drawer where the pouch of unset diamonds was kept. The manager's back was to the drawer while he was getting the other merchandise to show, which the defendant, after viewing it, declined to purchase, and left the store with the same man who had accompanied him. Approximately two and one-half hours later, the manager discovered that the pouch of diamonds was missing. He identified State's Exhibit 1 and stated that its value was approximately $15,000.00.

Mary Rogers, the defendant's grandmother, testified that three or four days prior to the police coming to her house that the defendant came to her house and gave her a pouch to take care of for him. She put it behind the refrigerator. She testified that on Monday, July 14th, the defendant came to her house with a white man she had never seen before, and asked for the pouch. She gave it to him, and left the room. In a short time, the defendant came into the kitchen and gave the pouch back to her, and she again put it behind the refrigerator, where it remained until the officers came. She further testified that the defendant had not lived with her for four years, that he did not live at her house now, and that she did not know exactly where he did live. She stated that while the police were searching the house she retrieved the pouch from a box behind the refrigerator and said, "Hey, maybe this is what you are looking for," and gave it to them.

Officer Washburn testified that he went to Mary Rogers' residence on July 15th, armed with a search warrant. He testified that he first observed the pouch, State's Exhibit 1, in the hands of Mary Rogers.

■ The first proposition asserts that the trial court erred in overruling the defendant's Motion to Suppress the evidence gained through the search and seizure by authority of an invalid search warrant. We do not deem it necessary, in this opinion, to discuss the validity of the affidavit for a search warrant. It is uncontroverted that the house searched belonged to Mary Rogers, the grandmother of the defendant, and that the defendant did not live there and had not lived there for the past four years. We have held, in a long line of cases, that under such circumstances, the defendant has no standing to object to the search. In the very recent case of Miller v. State, Okl.Cr., 481 P.2d 175 (1970), we stated:

"However, had the warrant or affidavit for the search warrant under which the television was seized, been invalid and void, the defendant could not assert the invalidity of the warrant as being a violation of his personal right against search and seizure since the search was on the premises under the control of Mr. and Mrs. Sabolich and was for property under their dominion and control. We have repeatedly held:

'Constitutional provision guaranteeing one immunity from unlawful search and seizure is personal, and one accused will not be heard to object that the search of the property or premises of some third person is a violation of his constitutional rights.'

See Jones v. State, Okl.Cr., 302 P.2d 502."

The next proposition contends that the evidence presented by the State does not support the conviction for the crime of Grand Larceny. We are of the opinion that the evidence supports the trial court's finding that the defendant was guilty of the offense charged. The evidence proved that the defendant was in the jewelry store on the day that the diamonds were stolen, that he knew where the pouch of diamonds was kept, that his accomplice had the opportunity to steal the diamonds while he was diverting the store manager's attention, that the theft was discovered within a short period of time after both subjects left the store, that their value was in excess of $14,000.00, that the defendant delivered the diamonds to his grandmother the day following the theft, and that he intended to deprive the owner permanently and convert them to his own use by bringing a prospective buyer to his grandmother's house to view the stones. Although the proof of defendant's guilt was largely circumstantial all of the circumstances proven were not only consistent with his guilt, but also were inconsistent with his innocence. We, therefore, find this proposition to be without merit.

■ The final proposition asserts that the trial court erred in overruling defendant's Demurrer to the Information. The defendant argues under this proposition that the Information alleged that the defendant committed the crime of Grand Larceny, and it did not allege while acting in concert or conjointly with any other person. In Johnson v. State, Okl.Cr., 453 P.2d 390 (1969), in discussing a similar proposition, we stated:

"On appeal the defendant argues that since the Information charges the defendant as a principal without alleging that he acted in concert or aided and abetted another in the commission of a crime, and that the evidence adduced on the trial established that the burglary was actually committed by the defendant aiding and abetting one Walter Amy, there was a fatal variance between the Information and the proof. This specific assignment of error is without merit, for the Legislature, in its wisdom, enacted 22 O.S. § 432, the same providing:

'The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constitut-

ing the offense, or aid and abet in its commission, though not present, must be prosecuted, tried and punished as principals, and no additional facts need be alleged in any indictment or information against such an accessory than are required in an indictment or information against his principal.'

Title 22 O.S. § 433, further provides:

'An accessory to the commission of a felony may be prosecuted, tried and punished, though the principal felon be neither prosecuted nor tried, and though the principal may have been acquitted.' "

We similarly find this proposition to be without merit.

In conclusion, we observe that the record is free of any error which would justify modification or require reversal. The judgment and sentence is accordingly affirmed.

NIX, J., not participating.

BRETT, J., concurs.